IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-236-BO

| | |
|---|---|
| PAUL B. HETZEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| JPMORGAN CHASE BANK, N.A., and TRG ) | |
| SETTLEMENT SERVICES, LLP d/b/a CCS ) | |
| CONVENIENT CLOSING SERVICES, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on defendant TRG Settlement Services's ("TRG") motion to dismiss [DE 64], and defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion to dismiss [DE 66]. The motions are ripe for adjudication. For the reasons stated herein, TRG's motion is GRANTED and Chase's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case arises out of what plaintiff alleges is a botched real estate transaction.[1] In 2009, Mr. Hetzel owned three properties located at 201 Salter Path Road in Pine Knoll Shores, North Carolina ("Salter Path Road Property"), 160 Acton Road ("Acton Road Property") in Annapolis, Maryland, and 140 Spa Drive ("Spa Drive Property") also in Annapolis Maryland. In May 2009, all three properties were subject to loans with Chase, with outstanding principal balances totaling over $3 million. At that time, Mr. Hetzel had a good credit score and was current on all three loans with Chase. He then developed a plan to refinance all three properties with Merrill Lynch

---

[1] For purposes of ruling on the instant motions to dismiss, the Court accepts as true all of the allegations in the complaint. The Court notes that this background section is based on the allegations.

in order to save over $130,000 per year in interest payments.[2] Mr. Hetzel initiated his plan to refinance all three properties starting with the Spa Drive Property in May 2009.

Merrill Lynch enlisted the services of defendant TRG to handle the settlement and closing of its loan. TRG communicated with Chase to get the pay-off amount for the existing Spa Drive Property loan. TRG then instructed Mr. Hetzel to wire personal funds to its escrow account for the purposes of the closing and instructed him to refer to the Merrill Lynch loan number when initiating the wire. TRG then closed the transaction on or about May 5, 2009 and disbursed the funds to Chase. During this process, Mr. Hetzel relied on TRG and Chase to properly arrange the closing of the loans and disbursement of funds to pay Chase for the Spa Drive Property and to initiate the Merrill Lynch loan. He followed the instructions provided by TRG. However, the funds were misapplied and the Salter Path Road Property was paid off instead of the Spa Drive Property.

When Mr. Hetzel learned of the misapplication of funds to the Salter Path Road Property, he contacted Chase and TRG numerous times and attempted to reverse the process, however, no corrective action was taken at that time by Chase. As a result of the mistake, the Deed of Trust on the Salter Path Road Property was cancelled and the mortgage on the Spa Drive Property continued to be in effect. As a result Mr. Hetzel found himself in a position where he was expected to make payments towards three different loans[3] on the two properties.[4] However, because he was under the impression it had been satisfied, Mr. Hetzel stopped paying Chase's Spa Drive Property mortgage in May 2009. Subsequently, that loan fell into arrears and foreclosure was set to commence as of August 2009. This happened despite Mr. Hetzel and

---

[2] Mr. Hetzel alleges that his Chase loans were subject to over 6% interest whereas Merrill Lynch offered a very low interest rate of about 2.125%.
[3] One Chase loan on each property and the Merrill Lynch loan on the Spa Drive Property.
[4] Mr. Hetzel continued to pay on the improperly satisfied Salter Path Road loan via an auto-pay feature of his bank account which Chase advised him not to disable.

2

Chase being in constant communication and Chase's knowledge of the mistake that had occurred. As a result of the mishandling of the pay-off funds and the subsequent default on the Spa Drive mortgage, which was supposed to have been satisfied, Mr. Hetzel's strong credit score was severely impacted, thus delaying and eventually destroying his plan to refinance all three properties at lower interest rates which then would have allowed Mr. Hetzel to keep the properties. Mr. Hetzel's credit score was so severely impacted that he was no longer under consideration for any sort of refinance from any company.

On May 22, 2009, a certificate of satisfaction for the Deed of Trust of the Salter Path Road property was recorded in the Carteret County Registry. After learning of the closing mistake, Chase unilaterally re-recorded the Deed of Trust for the Salter Path Road Property on June 24, 2009. Chase informed Mr. Hetzel that the Salter Path Road loan was reinstated as of August 15, 2009, but did not record a rescission of certificate of satisfaction until March 4, 2013. Chase indicated to Mr. Hetzel that the Spa Drive Property was paid off as of September 24, 2009. Chase attempted to have Mr. Hetzel execute documents indicating that he had initially requested the Salter Path Road Property be paid off, but then requested that it be reinstated. Mr. Hetzel did not sign the documents because it was not an accurate portrayal of events, because Chase would not agree in writing to remedy the damage to Mr. Hetzel's credit, and because Chase continued to seek foreclosure of the Spa Drive Property even though the loan was to have been satisfied and Chase demanded that Mr. Hetzel sign the documents to stop the foreclosure.

The improper satisfaction of the Salter Path Road Property led to the nonpayment of insurance premiums by Chase, thus causing Mr. Hetzel's preferred grandfather policy for flood insurance to be terminated. The new policy Mr. Hetzel obtained was significantly more expensive.

3

Case 4:13-cv-00236-BO   Document 81   Filed 12/22/14   Page 3 of 14

Mr. Hetzel asked Chase to restore his credit and to place him in the position he would have been in but for the error in applying the loan proceeds, by modifying the two mortgages remaining with Chase on favorable terms. The attempts to modify those loans failed and in 2012, the Acton Road loan went into default. At that point, Mr. Hetzel requested authority to sell individual lots at a reasonable price to reduce the indebtedness owed and to mitigate losses, but Chase refused to allow a partial release to sell lots. As a result, Mr. Hetzel lost the property and the value of the capital improvements made to the property. Further, the status of the Salter Path Road Property is now in question as Mr. Hetzel has fallen behind on payments for that mortgage. Foreclosure has been threatened, but has not yet been initiated. As a result Mr. Hetzel has not been able to rent the property out in advance as was his practice and he has lost rental income.

On July 22, 2014, this Court entered an order allowing Mr. Hetzel to amend his complaint and dismissing several of the defendants in this action leaving only TRG and Chase. [DE 58]. In the second amended complaint, Mr. Hetzel brings six claims for relief: (1) Negligence against Chase and TRG; (2) Negligence Per Se against Chase; (3) Breach of Fiduciary Duty against Chase and TRG in the alternative to negligence; (4) Unfair and Deceptive Trade Practices in the alternative to negligence, negligence per se, and breach of fiduciary duty; (5) Breach of Contract against Chase in the alternative to negligence; and (6) Breach of the Implied Covenant of Good Faith against Chase in the alternative to negligence. [DE 59].

## DISCUSSION

I.   STATUTE OF LIMITATIONS.

The applicable statute of limitations for negligence and breach of fiduciary duty is three years. N.C. Gen. Stat. § 1-52; *Harold v. Dowd*, 561 S.E.2d 914, 917 (N.C. App. 2002); *Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328, 335 (N.C. App. 2005). The limitations period

for a claim for unfair and deceptive trade practices under North Carolina law is four years. N.C. Gen. Stat. § 75-16.2. The statute of limitations for plaintiff's breach of the implied covenant of good faith is also three years. *Mebane v. Phoenix Cos.*, 2003 U.S. Dist. LEXIS 16830 at *4 (M.D.N.C. Sept. 16, 2003); *Rolfes v. Decision One Mortg. Co.*, 2011 U.S. Dist. LEXIS 57457 at *3 (E.D.N.C. May 27, 2011). The limitations period for a breach of contract claim is normally three years. N.C. Gen. Stat. § 1-52(1). Although N.C. Gen. Stat. § 1-47(2) allows for a ten year statute of limitations, it applies only to claims made "against the principal" to a sealed instrument. *Harrington v. Gerald*, 2008 N.C. App. LEXIS 635 at * 5–6 (N.C. App. April 1, 2008). Where, as here, the plaintiff is signatory and therefore principal of a promissory note and security agreement, a suit against defendants cannot be "against the principals" and therefore the ten year statute of limitations does not apply. *Id.* Therefore, plaintiff's claim breach of contract claim in this case is governed by the three year limitations period.

    A.    Plaintiff's Claims Are Barred by the Statute of Limitations.

The statute of limitations begins to run when the plaintiff's right to maintain an action accrues. *RPR & Assocs. V. O'Brien/Atkins Assocs., P.A.*, 24 F. Supp. 2d 515, 523 (M.D.N.C. 1998) (citing *Thurston Motor Lines, Inc. v. Gen. Motors Corp.*, 128 S.E.2d 413 (1962)). Under North Carolina law, "[a] cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though . . . the injuries cannot be discovered until a later date." *Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.*, 677 S.E.2d 848, 853 (N.C. App. 2009) (quoting *Harold*, 561 S.E.2d at 918). Similarly, a cause of action for unfair and deceptive trade practices accrues when the violation occurs. *Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 387 (N.C. App. 1996) (citing *United States v. Ward*, 618 F. Supp. 884, 902 (E.D.N.C. 1985)). A cause of action for breach of fiduciary duty accrues when "the claimant 'knew or, by

5

due diligence, should have known' of the facts constituting the basis for the claim." *Pittman v. Barker*, 452 S.E.2d 326, 332 (N.C. App. 1995). A cause of action for breach of contract accrues "at the time of the breach which gives rise to the right of action." *United States Leasing Corp. v. Everett*, 363 S.E.2d 665, 669 (N.C. App. 1988). Under each of these standards, plaintiff's claims, filed on October 10, 2013, are barred by the applicable statute of limitations.

1. Negligence.

Taking plaintiff's allegations as true, any error, omission, negligence, or other misconduct on the part of TRG and Chase must have occurred on the closing date of May 5, 2009. Plaintiff discovered the alleged negligence on May 15, 2009 when he received a letter from Chase informing him that the mortgage corresponding to 201 Salter Path Road had been paid off. Plaintiff further alleges that damages to his credit, potential foreclosures, and the ability to follow through with refinancing were rather immediate and realized by September 2009. Therefore, at the very latest, plaintiff's causes of action for negligence accrued in September, 2009. Accordingly, the statute of limitations plaintiff's claim for negligence against TRG expired in September, 2012, well before plaintiff filed this action. Accordingly plaintiff's negligence action is time-barred.

2. Negligence per se.

For the reasons stated *supra* Part I.A.1, plaintiff's negligence per se claim is also time-barred.

3. Breach of fiduciary duty.

Plaintiff alleges that Chase failed to correctly pay escrowed insurance funds in 2007, 2008, 2009, and 2010. Plaintiff alleges that he knew about the missed payments each time they occurred, so there is no issue over discovery here. Chase concedes that the missed 2010 payment

may not be time-barred depending on whether it occurred before or after October 10, 2010, but the remaining claims regarding breach of fiduciary duty are clearly time-barred.

### 4. Unfair and deceptive trade practices.

Plaintiff's proposed unfair and deceptive trade practices claim is based on the May 2009 pay off application – including the resulting damages. As discussed *supra* Part I.A.1, the latest date this claim could have accrued was September 2009. With the four year statute of limitations, plaintiff's suit filed in October 2013 is time-barred.

### 5. Breach of contract.

Plaintiff alleges that the breach occurred as far back as 2007 on the insurance payments and in May 2009 when Chase failed to properly satisfy the involved mortgage. Thus the three year statute of limitations ran in 2012.

### 6. Implied covenant of good faith.

This claim derives out of contract and the statute of limitations is the same, so like plaintiff's breach of contract claim *supra* Part I.A.5, this claim is barred by the statute of limitations.

### B. Equitable Estoppel Saves the Claims Against Chase but not TRG.

Plaintiff argues that equitable estoppel should operate here to overcome his problem with the statutes of limitations discussed *supra* Part I. A. North Carolina Courts recognize the general principle that "time frames may be tolled where equitable considerations justify their suspension." *Aikens v. Ingram*, 652 F.3d 496, 517 (4th Cir. 2011) (citations omitted). Equitable estoppel can be applied to prevent the defendant from asserting the statute of limitations as a defense where his or her own conduct prevented the plaintiff from otherwise timely filing the complaint. *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002) (citation omitted).

7

Equitable estoppel applies where "the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline, even though the plaintiff knows that it exists." *Id.* (quotation omitted). This equitable doctrine typically applies in cases in which some misleading act or statement on the part of the defendant justifiably induces the plaintiff to defer timely prosecution of the claim. *Aikens*, 652 F.3d at 517. Neither fraud, intentional or unintentional, bad faith, nor an intent to deceive are necessary to invoke the doctrine of equitable estoppel to prevent a defendant from relying on the statute of limitations. *Miller v. Talton*, 435 S.E.2d 793, 797 (N.C. App. 1993) (citations omitted).

> The elements of equitable estoppel in North Carolina are:
>
> (1) conduct amounting to a false representation, concealment of material facts, or that which is reasonably calculated to convey the impression that facts are other than what the estopped party afterwards attempts to assert; (2) intent or expectation that the conduct should be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; and (3) knowledge, actual or constructive, of the real facts on the part of the defendant.

*Ussery v. Branch Banking & Trust Co.*, 743 S.E.2d 650, 654–55 (N.C. 2013). Plaintiff has alleged that equitable estoppel applies against both Chase and TRG. Plaintiff alleges the following facts in support of his argument.

Following the misapplication of the loan funds, defendant Chase made numerous representations to Mr. Hetzel from May 2009 through September 2012. By letter dated October 7, 2009, Chase indicated that it would take steps to ensure that any negative impact on Mr. Hetzel's credit would be reversed or abated. [DE 59 at ¶ 64]. Chase assured Mr. Hetzel that his credit history would be restored and that he would have the opportunity to refinance or modify the other two Chase loans on similar terms to that of the Merrill Lynch loan. [DE 59 at ¶ 69]. Chase told Hetzel throughout 2010 that it would "make things right" and that he would be put

into a mortgage product featuring a similar interest rate, or at least as low as 2.5%. [DE 59 at ¶ 72].

Mr. Hetzel, Chase, and TRG participated in a conference call to discuss how to fix the issues arising out of the misapplication of the loan funds, and both defendants promised to restore him to the position he would have enjoyed, but for the mistake. [DE 59 at ¶ 69]. Plaintiff alleges that these communications with Chase and TRG lasted several months during 2009 and that those with Chase extended through 2012, and that they created a reasonable expectation on the part of Mr. Hetzel that both defendants were working together to reverse the transaction, properly apply the loan funds, fix any issues related to his credit, and restore his position. [DE 59 at ¶ 99]. Mr. Hetzel alleges that while these communications were ongoing, Chase was attempting to insulate itself from liability. Chase attempted to have Mr. Hetzel sign a letter making it appear as though the Salter Path Road property had been properly satisfied and that Hetzel was requesting reinstatement which Chase was going to honor. [DE 59 at ¶ 53]. Chase told Mr. Hetzel that such documents were necessary to reverse the transaction and stop the foreclosure on the Spa Drive property. [DE 59 at ¶ 53–59].

Further, Mr. Hetzel alleges that Chase charged him late fees on the loan that was to have been satisfied and which he had no choice but to pay as a condition of reinstating the loan on the Salter Path Road property. [DE 59 at ¶ 46]. Mr. Hetzel then received a letter dated August 5, 2009 in which he received notice of acceleration and intent to foreclose from Chase as to the Spa Drive property, a loan which was to have been paid off. [DE 59 at ¶ 50]. Chase continued to tell Mr. Hetzel that the problems would be fixed, and specifically told him "not to worry" about the foreclosure notice, as it would put him back in the position he enjoyed prior to the failed loan closing. [DE 59 at ¶ 51].

9

Mr. Hetzel alleges that, as a result of the numerous assurances given and representations made by Chase, acting in concert with TRG, that he, in good faith, submitted to a modification process as directed by Chase, continuing to believe that Chase was going to take action to correct the fallout from the misapplication of the loan payoff. [DE 59 at ¶¶ 74–81, 94–100]. Mr. Hetzel estimates that he was in telephone contact with Chase in excess of 50 times between February 2010 and September 2012 concerning his efforts to modify the loans on both the Acton Road property and the Salter Path Road property. [DE 59 at ¶ 95]. Mr. Hetzel states that he realized that Chase had no intention of honoring its promises and assurances when it issued a final denial of a modification for the loan on the Acton Road property in September 2012. [DE 59 at ¶ 100].

    1.  Chase.

The conduct listed above on the part of Chase gives rise to an equitable estoppel to its affirmative defense of the statute of limitations. Chase took the position that it would fix all issues stemming from the loan closing, which included restoring the plaintiff's financial position and correcting any negative credit reporting. However, it appears that at the same time, Chase was actively working to insulate itself from potential liability associated with the loan closing and continued to give the appearance of working with Mr. Hetzel up until the time it believed itself to be free of the three year statute of limitations. As a result of the promises and assurances given by Chase, Mr. Hetzel was clearly justified in believing that Chase was continuing to attempt to resolve his issues. By refraining from suit and relying on Chase's representations and participating in alternative methods to correct the wrong, Mr. Hetzel was lulled into a false sense of security and slept on his rights. Chase's change in position from its assurances of working with Mr. Hetzel to restore him to his prior position to its perfunctory denial of the modification of the Acton Road property amounts to a misrepresentation by Chase. Because Mr. Hetzel has

10

Case 4:13-cv-00236-BO   Document 81   Filed 12/22/14   Page 10 of 14

sufficiently pled facts supporting his theory of equitable estoppel against Chase, the Court will not dismiss his claims against Chase as time-barred.

2. TRG.

However, the facts pled against TRG do not give rise to equitable estoppel. At most, Mr. Hetzel's allegations show only that TRG attempted to work with Chase to resolve the matter of the mishandled closing. Mr. Hetzel has not pled sufficient facts to show that TRG made any sort of misrepresentation to him implied or otherwise. TRG was involved with the loan closing that was mishandled, and TRG informed Mr. Hetzel that it was working with Chase to resolve the problem. That is all Mr. Hetzel alleges against TRG. Further, Mr. Hetzel's allegations acknowledge that his contact with TRG stopped in September 2009. Although Mr. Hetzel alleges further communications with Chase which clearly rise to the level of equitable estoppel, there is simply nothing that supports a finding that Mr. Hetzel has adequately alleged equitable estoppel against TRG. Accordingly, Mr. Hetzel's claims against TRG are time-barred as discussed *supra* Part I.A. and TRG is dismissed from this suit.

II. CHASE'S 12(b)(6) MOTION TO DISMISS.

Having addressed the statute of limitations problem and plaintiff's equitable estoppel arguments, the Court now turns to the other grounds which Chase, the sole remaining defendant in this action, raises in support of its motion to dismiss.

A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

    A.    Negligence Claim.

Chase argues that the economic loss doctrine bars plaintiff's negligence claim against it. This Court disagrees. Chase argues that plaintiff's negligence claim arises out of Chase's "handling, disburs[ing], and/or appl[ying] . . . the Merrill Lynch loan funds" and "modifying the loans on 201 Salter Path Road and 160 Acton Road" and therefore "any duty Chase could possibly owe relating to handling loan funds or modifying existing loans could only arise out of a contractual arrangement between Chase and plaintiff." [DE 67 at 12]. However, the Court finds that Chase owed a general duty of due care in its relationship with Mr. Hetzel. The wrong that occurred (the misapplication of the loan payoff funds) is much less a breach of contract than it is a simple negligence claim. Mr. Hetzel alleges that he informed Chase that he wanted to pay off one of the loans he held with them and then undertook the steps necessary to do so. While handling his funds, Chase misapplied them which clearly harmed Mr. Hetzel. This is not a failure of adhering to the terms of the loan contract as much as it is a failure to exercise due care when handling Mr. Hetzel's funds and being negligent in their handling and application. Therefore, the Court finds that the economic loss doctrine does not bar Mr. Hetzel's negligence claim.

12

Case 4:13-cv-00236-BO Document 81 Filed 12/22/14 Page 12 of 14

B.  Negligence Per Se Claim.

Under North Carolina law, "a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 577 S.E.2d 411, 415 (N.C. App. 2003). The statute under which plaintiff's alleged negligence per se claim arises does not offer any explicitly stated mechanism for private rights of action. N.C. Gen. Stat. § 53-244 ("SAFE Act"). Accordingly, plaintiff's claim for negligence per se fails and must be dismissed. However, per plaintiff's request, the allegations contained within the claim are allowed to stand for inclusion within plaintiff's claim for breach of the implied covenant of good faith and fair dealing under the loan agreement.

C.  Breach of Fiduciary Duty.

Because Chase's only argument as to this claim is based upon the statute of limitations and plaintiff has sufficiently pled equitable estoppel, the claim survives.

D.  Unfair and Deceptive Trade Practices.

Because Chase's only argument as to this claim is based upon the statute of limitations and plaintiff has sufficiently pled equitable estoppel, the claim survives.

E.  Breach of Contract.

Because Chase's only argument as to this claim is based upon the statute of limitations and plaintiff has sufficiently pled equitable estoppel, the claim survives.

F.  Breach of the Implied Covenant of Good Faith.

The Court finds that plaintiff has sufficiently pled his claim for breach of the implied covenant of good faith. The allegations as a whole within the complaint are sufficient to allow plaintiff's claim forward at this stage of the proceedings.

13

Case 4:13-cv-00236-BO   Document 81   Filed 12/22/14   Page 13 of 14

## CONCLUSION

For the foregoing reasons, defendant TRG's motion to dismiss is GRANTED and TRG is DISMISSED from this action. Chase's motion to dismiss is GRANTED IN PART and DENIED IN PART. Mr. Hetzel's negligence per se claim against Chase is DISMISSED. The remaining claims may proceed in their entirety.

SO ORDERED.

This the __17__ day of December, 2014.

                                            TERRENCE W. BOYLE
                                            UNITED STATES DISTRICT JUDGE