IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-236-BO

| | |
|---|---|
| PAUL B. HETZEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** |
| JPMORGAN CHASE BANK, N.A., | ) ) ) |
| Defendant. | ) |

This matter is before the Court on defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion for summary judgment [DE 115] and motion to strike [DE 113] and plaintiff's motion for protective order [DE 107] and motion for discovery sanctions [DE 109]. The motions are ripe for adjudication, and a hearing was held on February 3, 2017, in Raleigh, North Carolina. For the reasons stated herein, Chase's motion for summary judgment is granted in part and denied in part, Chase's motion to exclude is granted, plaintiff's motion for discovery sanctions is denied, and plaintiff's motion for protective order is denied as moot.

## BACKGROUND

This case arises out of what plaintiff alleges is a botched real estate transaction. In 2009, plaintiff owned three properties located at 201 Salter Path Road in Pine Knoll Shores, North Carolina ("Salter Path Road Property"), 160 Acton Road ("Acton Road Property") in Annapolis, Maryland, and 140 Spa Drive ("Spa Drive Property") also in Annapolis Maryland. In May 2009, all three properties were subject to loans with Chase, with outstanding principal balances totaling over $3 million. At that time, plaintiff had a good credit score and was current on all three loans with Chase. He then developed a plan to refinance all three properties with Merrill Lynch in

order to save over $130,000 per year in interest payments.[1] Plaintiff initiated his plan to refinance all three properties starting with the Spa Drive Property in May, 2009.

According to plaintiff, Chase misapplied the proceeds from that refinancing, resulting in the Salter Path Road Property being paid off instead of the Spa Drive Property as planned. Because plaintiff was under the impression it had been satisfied, he stopped paying Chase's Spa Drive Property mortgage in May 2009. Subsequently, that loan fell into arrears and foreclosure was set to commence as of August 2009. As a result, plaintiff's strong credit score was severely impacted, which he argues thus delayed and eventually destroyed his plan to refinance all three properties at lower interest rates which then would have allowed him to keep the properties. Plaintiff claims that his credit score was so severely impacted that he was no longer under consideration for any sort of refinance from any company. Plaintiff alleges this is a negligent action, but also admits that his credit score was restored within a few months of the misreported statement when Chase sent in a correction.

When Mr. Hetzel learned of the misapplication of funds to the Salter Path Road Property, he contacted Chase, arguing that Chase had a duty to correct the misapplication or assist plaintiff in obtaining alternative financing for his mortgage loans. According to evidence from discovery, Chase appears to have resolved the mistaken payoff by August. Representatives from Chase allegedly promised plaintiff that, should he be unable to obtain refinancing with Merrill Lynch, then Chase would refinance the loan at the same terms promised by Merrill Lynch. Plaintiff claims that Chase also assured him that if he could not obtain financing to refinance the Salter Path Road and Acton Road properties, Chase would modify those loans.

---

[1] Mr. Hetzel alleges that his Chase loans were subject to over 6% interest whereas Merrill Lynch offered a very low interest rate of about 2.125%.

2

In March 2010, Chase sent payment for a flood insurance policy on behalf of plaintiff to the wrong address, causing the policy to lapse and resulting in a premium increase from $348 to $7,500 per year. At this time plaintiff allegedly threatened to sue, but was talked out of by Chase's promises to fix the flood insurance issue and cover the difference in payments and give him the loan modifications it had promised. Finally, plaintiff asserts that Chase refused to refinance the two other loans it had with plaintiff and refused to allow plaintiff to subdivide and sell portions of one of his properties as it promised, causing those properties to fall into foreclosure.

## DISCUSSION

Motion to Strike

The Court will first address defendant Chase's motion to exclude the expert report, opinion, and testimony of plaintiff's witness, Andrew L. Kadala pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Chase seeks to strike or exclude Mr. Kadala as an expert, arguing that Mr. Kadala is not qualified to opine as an expert in consumer mortgage lending and servicing and that his opinions are irrelevant legal opinions.

Plaintiff's claims in this case largely rest on his allegations that Chase had a duty to correct the misapplication or assist plaintiff in obtaining alternative financing for his mortgage loans, and that Chase breached this duty to the detriment of plaintiff. In support of these allegations, plaintiff intends to have Mr. Kadala, a securities investment advisor with Wells Fargo Advisors, testify as to the duty Chase owed plaintiff and any breaches thereof.

Federal Rule of Evidence 702 provides that "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

in issue," "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. The Court serves as the gatekeeper for all expert testimony to make sure it is based on sound, reliable theory and does not constitute rank speculation. *Kumho Tire Co., Ltd. v. Carmichael.*, 526 U.S. 137, 141 (1999). The expert testimony is considered reliable only if the expert is qualified to render the opinion and the expert's underlying methodology is scientifically valid. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–90 (1993). The expert's testimony is relevant only if the expert properly applies that methodology or reasoning to the facts in issue. *Id.* at 591–93. The expert must explain how and why he has reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation. *Kumho Tire*, 526 U.S. at 152.

Here, plaintiff has failed to meet his burden to demonstrate that Mr. Kadala is qualified to provide testimony on the appropriate procedures that allegedly should have been followed in this case. Mr. Kadala is an experienced securities investment broker but has no discernible experience in consumer or residential mortgage lending and servicing. *See Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995) (experience in ski safety policies and testimony in other ski accident cases did not qualify expert to opine about snowmaking machine safety); *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799–800 (4th Cir. 1989) (expert with MBA and experience analyzing companies' business health not qualified to give antitrust testimony where she had no specific education or experience in antitrust matters); *Estate of Richard Myers v. Wal-mart Stores, Inc.*, 2011 WL 1366459, *3 (E.D.N.C. April 11, 2011) (architect with no specific experience in parking lot design not qualified to offer expert testimony on parking lot design). Similar to these cases, Mr. Kadala's securities investment industry experience without specific experience in residential mortgage lending and servicing does not qualify him to offer expert

testimony on various legal duties Chase owed to plaintiff as the loan servicer of plaintiff's residential mortgage loans or to explain how Chase breached a duty of care owed plaintiff. This Court finds that Mr. Kadala is not qualified as an expert on mortgage lending practices and policies and cannot testify as such.

Plaintiff asserts that the real issue in this case, and the issue upon which Mr. Kadala will testify, is a bank's obligation to correct mistakes it makes. Nonetheless, plaintiff still has not demonstrated Mr. Kadala's expertise in this subject, a subject which plaintiff has not defined with any particularity. Mr. Kadala's opinion is not based upon his presumed knowledge of a bank's obligation to correct its mistakes, nor any understanding and detailed experience in mortgage servicing and the mistakes that might occur in such an industry, but instead in his experience in banking financial services industry. For the reasons discussed above, this does not demonstrate that Mr. Kadala is qualified to speak to this issue, and plaintiff has not convinced the Court that Mr. Kadala's opinion is based in anything more than subjective belief or speculation.

Nonetheless, even assuming Mr. Kadala is qualified to opine to this issue, plaintiff still has not demonstrated that Mr. Kadala's opinions will assist the trier of fact in this case. Generally speaking, legal conclusions and standards are considered improper expert testimony because they do not assist the fact finder. *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (explaining that legal conclusions should be handled by the judge except in cases that "involve highly technical legal issues"). Mr. Kadala's opinions are largely conclusory—in effect simply stating that Chase owed a duty and breached that duty—and are therefore little more than formulaic recitations of impermissible legal conclusions. What constitutes a legal duty and

whether there was a breach of that duty under North Carolina law is a legal issue for the Court to instruct the jury on.

For these reasons, the Court finds that Mr. Kadala is not qualified to provide opinion testimony, and further that his testimony will not assist the trier of fact. For these reasons, Chase's motion to exclude the testimony of Mr. Kadala will be granted.

Motion for Summary Judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

*Equitable Estoppel*

The applicable statute of limitations for plaintiff's negligence, breach of fiduciary duty, implied covenant of good faith, and breach of contract claims are each three years. N.C. Gen.

Stat. § 1-52; *Harold v. Dowd*, 561 S.E.2d 914, 917 (N.C. App. 2002); *Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328, 335 (N.C. App. 2005); *Rolfes v. Decision One Mortg. Co.*, 2011 U.S. Dist. LEXIS 57457 at *3 (E.D.N.C. May 27, 2011); N.C. Gen. Stat. § 1-52(1). The limitations period for plaintiff's claim for unfair and deceptive trade practices under North Carolina law is four years. N.C. Gen. Stat. § 75-16.2.

As this Court previously held, plaintiff's claims accrued in 2009. Plaintiff survived a motion to dismiss on his clams against Chase because the Court found that he had pled sufficient facts to demonstrate that Chase should be equitably estopped from raising a statute of limitations defense. Defendant now contends that, with the close of discovery, the record evidence provides no genuine issue of material fact as to plaintiff's equitable estoppel theory. Chase argues it should therefore not be estopped from asserting its statute of limitations defense, and plaintiff's time-barred claims should fail as a matter of law.

North Carolina Courts recognize the general principle that "time frames may be tolled where equitable considerations justify their suspension." *Aikens v. Ingram*, 652 F.3d 496, 517 (4th Cir. 2011) (citations omitted). Equitable estoppel can be applied to prevent the defendant from asserting the statute of limitations as a defense where his or her own conduct prevented the plaintiff from otherwise timely filing the complaint. *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002) (citation omitted). Equitable estoppel applies where "the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline, even though the plaintiff knows that it exists." *Id.* (quotation omitted). This equitable doctrine typically applies in cases in which some misleading act or statement on the part of the defendant justifiably induces the plaintiff to defer timely prosecution of the claim. *Aikens*, 652 F.3d at 517. Neither fraud, intentional or unintentional, bad faith, nor an intent to deceive are necessary to invoke the

doctrine of equitable estoppel to prevent a defendant from relying on the statute of limitations. *Miller v. Talton*, 435 S.E.2d 793, 797 (N.C. App. 1993) (citations omitted).

The elements of equitable estoppel in North Carolina are:

> (1) conduct amounting to a false representation, concealment of material facts, or that which is reasonably calculated to convey the impression that facts are other than what the estopped party afterwards attempts to assert; (2) intent or expectation that the conduct should be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; and (3) knowledge, actual or constructive, of the real facts on the part of the defendant.

*Ussery v. Branch Banking & Trust Co.*, 743 S.E.2d 650, 654–55 (N.C. 2013). Whether a cause of action is barred by the statute of limitations is a mixed question of law and fact, *Piles v. Allstate Ins. Co.*, 653 S.E.2d 181, 184 (2007) (internal citation removed), and where the evidence is sufficient to present an inference that the cause of action is not barred, the issue is for the jury. *Little v. Rose*, 208 S.E.2d 666, 668 (1974). The jury must also resolve factual disputes pertaining to the elements of equitable estoppel. *Stratton v. Royal Bank of Canada*, 712 S.E.2d 221, 230 (2011). However, when there is no genuine issue of material fact, the question of estoppel is one for the court. *Id.*

Plaintiff's equitable estoppel theory relies on his allegations that between May 2009 and September 2012, Chase repeatedly promised him that Chase would correct his credit and refinance the Salter Path and Acton Road properties on terms similar to the Merrill Lynch loan on the Spa Drive property. Plaintiff has presented testimony regarding those promises, serving to create a genuine issue of material fact on the issue of equitable estoppel. Additionally, plaintiff's case on this issue will rely in large part upon his own testimony. As such, plaintiff's credibility as a witness will be significant to several genuine factual disputes in this case and cannot be determined by the Court as a matter of law. Thus, the Court finds that there is enough evidence

in the record when viewing it in the light most favorable to plaintiff to permit the inference that plaintiff's causes of action are not barred, and the factual disputes germane to this issue must be resolved by the jury. As such, whether Chase is equitably estopped from asserting a statute of limitations defense is a matter to be determined at trial.

Chase additionally argues that none of plaintiff's claims against Chase are supported by the evidence and that it is therefore entitled to summary judgment. The Court will discuss each of plaintiff's claims in turn.

*Negligence*

The elements of a common law negligence claim are "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Bridges v. Parrish*, 742 S.E.2d 794, 796 (2013) (citation omitted). Plaintiff bases his negligence claim on allegations that Chase was negligent by misapplying the loan funds for the Spa Drive property and taking too long to correct that error, not modifying the loans on the Salter Path and Acton Road properties, refusing to allow plaintiff to subdivide the Acton Road property, and failing to pay the flood insurance premiums.

In North Carolina, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (1978). As a result, North Carolina courts have recognized an "independent tort" arising out of breach of contract only in "carefully circumscribed" circumstances. *Strum v. Exxon Company*, 15 F.3d 327, 330–31 (4th Cir. 1994) (citing *Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 301 (1976)).

If this were a simply a failure to perform case, there would be no tort claim that could lie in addition to plaintiff's contract claims against Chase. However, in certain circumstances, North

Carolina courts have recognized that a duty of care may arise out of a contractual relationship, "the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract." *Olympic Prod. Co. v. Roof Sys., Inc.*, 363 S.E.2d 367, 371 (1988) (internal citation removed). This is because "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence." *Council v. Dickersons, Inc.*, 64 S.E.2d 551, 553 (1951). To illustrate this point, the North Carolina Supreme Court has offered the following example:

> take the contract of a carpenter to repair a house, the implication of his contract is that he will bring to the service reasonable skill, good faith, and diligence. If he fails to do the work, or leaves the house incomplete, the only remedy against him is ex contractu; but suppose he, by want of care or skill, destroys or wastes material, or makes the repairs so unskillfully as to damage other portions of the house; this is tort, for which the contract only furnished the occasion.

*Peele v. Hartsell*, 129 S.E.2d 97, 99 (1963) (internal citation removed).

The Court finds that Chase owed a general duty of due care in its relationship with plaintiff, and that plaintiff has presented sufficient evidence that could allow a reasonable jury to find that it violated that duty of care. The alleged wrong that occurred—the misapplication of the loan payoff funds—is much less a breach of contract than it is a simple negligence claim. Plaintiff alleges that he informed Chase that he wanted to pay off one of the loans he held with them and then undertook the steps necessary to do so. While handling his funds, Chase allegedly misapplied them which clearly harmed plaintiff. This is not a failure of adhering to the terms of the loan contract as much as it is a failure to exercise due care when handling plaintiff's funds and thereby acting negligently in their handling and application.

Having found that plaintiff can state a claim against Chase, the Court also finds that there are a number of genuine issues of material fact regarding this claim such that several of the bases for plaintiff's negligence claim can survive summary judgment. First, there is a genuine factual issue as to who caused the misapplication of the loan. Chase argues that the evidence shows that the alleged negligent act was a result of the inadvertent or mistaken action of CCS, a third party, producing in support an Indemnification Agreement, indicating that CCS had "inadvertently paid off" the Salter Path Road loan, and a letter from CCS indicating that CCS had received the wrong payoff from Merrill Lynch and the loan was paid off by mistake. Plaintiff disputes this, and, in support of its position, presented evidence in the form of business records produced pursuant to a subpoena served upon TRG Settlement Services, another third party, which is accompanied by a business records affidavit. Plaintiff argues that negligence on the part of Chase can be inferred from these documents, since the entirety of the loan file at TRG refers to 140 Spa Drive as the correct property, while the pay-off itself contained the wrong information corresponding to 201 Salter Path. Whether Chase is in fact at fault for the misapplied loan is a genuine issue of a material fact, and cannot be resolved by the Court on summary judgement.

There is also a genuine issue of material fact as to plaintiff's claim that Chase was negligent for failing to pay flood insurance premiums on time, causing the policy to lapse. There is no dispute that a payment for flood insurance was sent to the wrong address and led to the cancellation of the policy due to non-payment of premium. Chase argues, however, that the evidence supports a determination that plaintiff's actions contributed to his alleged loss, and in failing to thereafter get his own policy and seek the difference in cost he has either suffered no damages by the error or failed to mitigate his damages. Plaintiff argues that the facts show that he had alerted Chase of the problem and had attempted to resolve it in May, 2009, but that Chase

had again failed to pay in 2010, causing plaintiff to be seriously damaged. According to plaintiff, any suggestion that he therefore contributed to the loss in this instance is not supported by the facts. There is therefore, a genuine issue of material fact as to whether Chase was reasonable in managing and disbursing funds from the escrow account and whether plaintiff's actions were negligent and contributed to the alleged injury. These are issues for the jury, and as such plaintiff's negligence claim based on this incident survives summary judgment.

Plaintiff cannot bring a claim of negligence for Chase's reports to the credit agencies because negligence claims based on reporting to credit agencies are barred by federal statute. The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, ("FCRA"), preempts state law—including negligence—in the area of allegedly erroneous credit reporting. *Ross v. Wash. Mut. Bank*, 566 F. Supp. 2d 468, 474–75 (E.D.N.C. 2008). Section 1681t(b)(1)(F) provides in pertinent part:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .

15 U.S.C. § 1681t(b)(1)(F). Further, because there is no allegation of willfulness or malice in the alleged errant reporting, section 1681h(e) bars a claim for negligence:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of . . . negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title.

15 U.S.C. § 1681h(e). Plaintiff's negligence claim for allegedly erroneous credit reporting cannot stand as a matter of law.

There can also be no negligence claim for refusing to renegotiate or modify loan and contract agreements, and so plaintiff's negligence action based on this claim is also dismissed.

12
Case 4:13-cv-00236-BO   Document 137   Filed 02/14/17   Page 12 of 20

"[I]n an ordinary debtor-creditor transaction, the lender's duties are defined by the loan agreement and do not extend beyond its terms." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 8 (2015) (citation omitted). There is usually no tort liability for refusal to modify a loan, *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013), and plaintiff has not demonstrated that there was a promise acceptable under North Carolina law that would give rise to an obligation or duty by Chase to modify the loans. *See Pearsall v. Select Portfolio Servicing, Inc*, No. 7:15-CV-106-FL, 2015 WL 9223076, at *4–5 (E.D.N.C. Dec. 17, 2015) (holding that mortgage servicer had no duty to modify the plaintiff's loan and dismissing tort claims based on that alleged duty). There is no evidence in writing that supports an obligation to modify these loans. Nor can plaintiff's allegations of oral promises made by Chase serve to create such an obligation. To the extent plaintiff claims that defendant breached the parties' oral agreement to modify the contract, such a claim is barred by North Carolina's statute of frauds and the parol evidence rule. *Clifford v. River Bend Plantation, Inc.*, 323 S.E.2d 23, 26 (1984) ("When the original agreement comes within the Statute of Frauds, subsequent oral modifications of the agreement are ineffectual."). Additionally, North Carolina courts do not allow the doctrine of promissory estoppel to create a contractual obligation upon which the party can then sue for breach of that duty. *Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 358 S.E.2d 539 (1987). For these reasons, there is no evidence to suggest that Chase had a duty to modify plaintiff's loans, nor is there any evidence to suggest that Chase was otherwise negligent in refusing to modify the Acton Road and Salter Path loans. The only contract between Chase and plaintiff—the note and deed of trust—does not obligate a modification, and an oral promise to do so in the future is not an enforceable duty under North

Carolina law. Therefore, plaintiff's negligence claim for failing to modify his loans must be dismissed.

*Breach of Fiduciary Duty*

Plaintiff also brought a breach of fiduciary duty claim in the alternative to negligence, claiming that Chase repeatedly failed to timely pay flood insurance premiums related to Salter Path Road property, causing the policy lapse and be reinstated at a much higher premium. The Court finds that a reasonable jury could find that a fiduciary relationship existed between the parties in relation to managing the escrow account, and that there exists a genuine issue of fact for a jury to determine on this issue.

A fiduciary duty generally arises when one reposes a special confidence in another, and the other "in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 266 (2014). Ordinary borrower-lender transactions are considered arm's length and do not typically rise to fiduciary duties. *Id.* While a fiduciary relationship does not normally exist between a mortgagor and a mortgagee, one may exist "as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 659 S.E.2d 442, 451 (2008) (internal citation removed). Under these circumstances, where plaintiff has alleged that he had placed his trust and confidence in Chase to receive and process his payments in escrow as agreed, and where Chase was in the unique position of controlling when and how the escrow funds would be disbursed, a jury could find that the circumstances surrounding the mortgager-mortgagee relationship between plaintiff and Chase created a fiduciary duty through the obligations of trust, confidence and good faith. Because Chase was exclusively responsible for the payment of the insurance premiums and

because the plaintiff's homeowner's insurance was billed directly to Chase, a reasonable juror could determine that Chase possessed sufficient control, direction, and influence over plaintiff's interests to render it a fiduciary over those funds. *See Smith v. GMAC Mortg. Corp.*, No. 5:06-CV-125-V, 2007 WL 2593148 (W.D.N.C. Sept. 5, 2007).

It is therefore for the jury to determine whether in these circumstances Chase acted as an agent for the plaintiff and whether plaintiff can be deemed as having placed a special confidence in Chase with regard to the maintenance of the escrow account. It is also for the jury to decide whether Chase was, in turn, charged with acting in the best interests of plaintiff in managing and disbursing funds from that account, and whether Chase breached that duty in failing to make send the insurance payments correctly as agreed.

*Unfair and Deceptive Trade Practices Act*

Plaintiff has next alleged, in the alternative to negligence and breach of fiduciary duty, that Chase violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). To succeed on a claim under the UDTPA plaintiff must prove 1) an unfair or deceptive act or practice, 2) in or affecting commerce, 3) that proximately caused his injury. *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 223 (2013).

In this case, plaintiff has alleged that Chase repeatedly assured him that he would receive a loan modification and represented that it would refinance his two remaining loans on terms similar to the Merrill Lynch loan on the Spa Drive property, and allegedly did so in an unfair attempt to delay plaintiff from seeking legal redress. Plaintiff argues that these representations by Chase—that it would work with plaintiff to rectify the situation, to reverse the transaction, and to repair or restore the plaintiff's financial position—were false at the time they were made. Plaintiff additionally argues that he can demonstrate that Chase knew or should have known that

his loans were ineligible under the Home Affordable Modification Program ("HAMP") since they were over the principal loan limit, and that the very act of putting him through that process that was designed to fail was a deceptive act or practice giving rise to a UDTPA claim. Alternatively, plaintiff argues that Chase's repeated failing to properly pay monies out of the 201 Salter Path Road escrow account is a repeated breach of fiduciary duties that can give rise to a UDTPA claim.

"North Carolina . . . has held that conduct which constitutes breach of fiduciary duty and constructive fraud is sufficient to support a UDTP claim." *Trantham v. Michael L. Martin, Inc.*, 745 S.E.2d 327, 333 (2013) (internal citation removed). Plaintiff has not argued or demonstrated that there was constructive fraud in the mispayment of flood insurance premiums. Additionally, there cannot be a UDTPA claim for failure to modify a loan or contract when there was no obligation to do so, and it does not appear there was any deceptive or unfair act in the recording of documents related to the reinstated Saltar Path loan, because the evidence demonstrates that was precisely what plaintiff requested.

However, whether Chase actually made promises that plaintiff would receive a loan modification, and whether such conduct would constitute a deceptive or unfair trade practice, are questions of fact for a jury to determine. There is just enough evidence in the record, assuming it can be proven at trial and when viewing it in the best light to plaintiff, to permit the inference that a reasonable jury could find for plaintiff. Therefore these claims can stand and be taken before a jury.

*Breach of Contract*

Plaintiff also brought a breach of contract claim in the alternative to negligence. His first breach of contract claim is that Chase's failure to pay the insurance premiums on the flood and

or hazard policies is a material breach of the contract between the parties. As discussed above, there are questions of fact related to this issue and it can stand.

Plaintiff has also alleged that there was a contractual obligation to accept and apply payments as directed by plaintiff and that Chase committed a material breach of this contract when it failed to promptly and accurately satisfy the mortgage on the Spa Drive property upon receipt of the pay-off funds from plaintiff. Chase argues that there was no breach by Chase of any contractual duty to apply payments, that in fact, Chase reinstated Plaintiff's Salter Path Loan as requested and paid off the Spa Drive Loan as requested. Whether Chase breached its contract with plaintiff is a question for the jury to determine based on the evidence as will be presented at trial. It does not appear from the briefs that Chase has argued that plaintiff's breach of contract claims should be dismissed. Regardless, the Court finds that plaintiff has stated a proper breach of contract claim and that there is a genuine issue of material fact related to these claims and that they will survive summary judgment.

*Breach of Implied Covenant of Good Faith*

Finally, plaintiff brought a claim for breach of the implied covenant of good faith and fair dealing in the alternative to negligence and based it on the same allegations as his negligence claim. North Carolina law recognizes that a covenant of good faith and fair dealing is implied in every contract. *Bicycle Transit Auth. V. Bell*, 333 S.E.2d 299, 305 (1985). Under the implied covenant, neither party is to do anything to injure the rights of the other party to receive the benefits of the agreement, but instead, the parties are to act in good faith to carry out the purposes for which the agreement entered into. *Maglione v. Aegis Family Health Ctrs.*, 607 S.E.2d 286, 291 (2005).

The only contracts between the parties are the Notes and Deeds of Trust, and North Carolina courts have held the obligations identified therein are the only breaches that occur. *See Camp v. Leonard*, 515 S.E.2d 909, 913 (1999) ("[A] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party.") (citations omitted); *Wagner v. Branch Banking and Trust Co.*, 634 S.E.2d 273, 2006 WL 2528495, at *2 (N.C. Ct. App. Sept. 5, 2006) (explaining that the North Carolina Court of Appeals has specifically held that "a lender has a duty to perform those responsibilities specified in a loan agreement, but has declined to impose any duty beyond those expressly provided for in the agreement.").

Plaintiff has not demonstrated, and there is no evidence to support the position, that Chase was under contractual obligation in the loan agreements to modify the loans or amend their terms. There can thus be no claim that Chase breached an implied contractual covenant of good faith and fair dealing for something it was not obligated under contract to do. However, plaintiff has demonstrated that Chase was obligated to accept and apply loan payments as directed. Chase argues that there was no breach by Chase of any contractual duty to apply payments, because it reinstated plaintiff's Salter Path Loan as requested and paid off the Spa Drive Loan as requested, but plaintiff argues that the conduct discussed above related to the mistaken payoff and resultant fallout constitutes bad faith on the part of Chase. There is enough in the record to allow this issue to go before a jury which will have to determine if Chase acted in good faith and fairly towards plaintiff with respect to its obligations under their loan agreement.

For these reasons discussed above, because genuine issues of material fact remain as to several of plaintiff's claims, Chase's motion for summary judgment will granted in part and denied in part.

Motion for Discovery Sanctions

Plaintiff filed a motion for discovery sanctions, seeking certain evidentiary preclusions and attorney's fees due to Chase's alleged failure to provide answers to interrogatories. Plaintiff amended its motion to attach supplemented answers to those disputed interrogatories filed soon after by Chase. Plaintiff has not demonstrated that these circumstances present the type of conduct that merits the sanctions requested.

When examining a requested sanction that runs "head-on [into] the party's rights to a trial by jury and a fair day in court," the court's discretion is narrower and it must apply "a four-part test:" (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-06 (4th Cir. 1977).

Plaintiff has not presented evidence of bad faith on the part of Chase. Chase served responses and objections at the time in which its responses to interrogatories were due. These responses consisted of specific objections and indicated for all but five responses that supplementation was possible if the parties resolved the objections. Supplementation was thereafter served on plaintiff's counsel as promised. The Court does not find bad faith inherent in these typical discovery actions, and plaintiff has not presented any other evidence of bad faith. Additionally, even if Chase was initially evasive in its replies, as plaintiff apparently complains of, there is no case that supports levying such dramatic sanctions only upon evasiveness in responses to interrogatories. The Court also finds that little prejudice has been caused to plaintiff because Chase's responses were ultimately supplemented as agreed upon and because plaintiff

was served with all supplementary responses before needing to respond to summary judgment and before the parties have started trial preparation. As Chase has complied with its discovery obligations, there is no also need for deterrence. There has also been no specific order that Chase has ignored, evaded, or failed to comply with. For these reasons, because plaintiff failed to make even a basic showing that any sanction is warranted, let alone a drastic sanction that would bar Chase from making several affirmative defenses and would restrict it to presenting only documentary evidence at trial, the motion will be denied.

Motion for Protective Order

Finally, plaintiff filed a motion for protective order, seeking an order excusing plaintiff from responding to certain outstanding interrogatories and requests for production served by Chase. Defendant filed a notice that it has withdrawn its request for the evidence that was the subject of plaintiff's motion for protective order. [DE 133]. The Court therefore finds that plaintiff's motion is mooted by this notice.

## CONCLUSION

For the foregoing reasons, defendant Chase's motion for summary judgment is GRANTED IN PART and DENIED IN PART. [DE 115]. Chase's motion to exclude is GRANTED [DE 113]. Plaintiff's motion for discovery sanctions is DENIED. [DE 109]. Plaintiff's motion for protective order is DENIED as moot. [DE 107].

SO ORDERED, this _11_ day of February, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE